The next case on the docket is West Bend Mutual Insurance v. Randolph County Fair v. Raymond Hubert. Now, Mr. Grimmel. I'll sit down. That's handwriting. Thank you. That's okay. Good morning, Your Honors. May it please the Court and the Council. My name is George Grimmel, and we represent Mr. Raymond Hubert. That's Jordan Grimmel's? Grimmel's, yes. Oh, okay. Thank you. I do apologize for the handwriting. No, I like to get it right. And we represent Mr. Raymond Hubert. Just some quick background on this case, which I'm sure you've gathered from the statement of facts. This case started with an underlying lawsuit that we filed on behalf of Mr. Raymond Hubert v. Randolph County Fair Board. While that lawsuit was going on, West Bend Mutual filed a declaratory judgment action to find out whether there was even coverage or not for the Fair Board. The lawsuit went on for a while. We've been here on that. That's got taken care of. That's stagnant now while we're waiting for this part of it. So the personal injury lawsuit is on hold? Yes, to find out whether there will be coverage or not. Okay. So in the meantime, once that came back on appeal So in the meantime, in the personal injury suit, did the insurance carrier enter its appearance? Yes, that's been handled, yes. It's basically to see whether now we're just waiting. Depending on how this goes, that will move to trial most likely. I understand. So this is the issue? Yes. Okay. So we then presented for the declaratory judgment action in cross motions for summary judgment, us filing one saying that it was ambiguous. There was no defense, or I'm sorry, the plaintiff in the declaratory judgment action filed one saying the term is not ambiguous. There is no question as a matter of law. The judge obviously granted summary judgment for the plaintiff and found that there was no ambiguity in the contract, therefore no coverage applied. So we appealed. As this is a contract and a summary judgment action, we're here under de novo and manifest way to the evidence standard. So was there discovery taken? I mean, I know there was discovery taken because there are quotes from depositions, I think, in the record. Yes. But one of the questions I have is this. In order to get involved in this mud bog race, did an individual with the truck have to fill out an application or some kind of form to participate? I believe that was discussed in the lawsuit portion of the discovery. What I recall was that they do fill out some type of application to make sure their vehicle doesn't have certain modifications or something on it, and just their name, address, and I believe that type of thing. I don't think they go through a very formal process. I think they sign up for it, they submit it to the board, and then they're entered as they come, unless their vehicle is not qualified to be in such an event or something. And is there money paid? There is money paid to the winner. I think that was dependent on the amount of people who actually entered the mud bog event themselves. There is an application fee, to my knowledge. That's what I was asking. So there is an application fee? I do believe there was. Okay. Now, Mr. Huber himself was not, or our position is he was not, quote, a participant in this mud bog event. Mr. Huber was someone who was in the mud pit. What his job was, was to, what a mud bog is, really quick I can explain, is a truck drives basically into a pit full of mud and water. It sees how far that driver can get. They measure it, and then the truck has to get pulled out because they usually are stuck. Mr. Huber's job was to attach a cable from a tractor to the stuck vehicle, and then he backed away. The tractor pulled the truck out. The next contestant comes up. That was Mr. Huber's job, along with making sure nobody got into the mud pit, spectators, and everyone was back at a safe distance and such. So that was Mr. Huber's job. And how was he identified? Did he have on a vest of any kind or a colored something? I don't know if that's ever been brought up, Your Honor. I assume with the way these types of things are set up, I assume he was probably wearing a T-shirt and jeans. But I don't know for sure. So nobody would have known that he was a volunteer or participating in the event? It's a small event, so the only people aside from the drivers actually in the pit past the lines were all volunteers who were familiar with each other. So I think that the others would have known, unless you're asking, I guess I can ask you to clarify. If I went to the event, would I know the difference between a driver versus somebody who's going to pull him out when he gets stuck because he's wearing something green or orange that says staff or whatever? There is a possibility that they did have some kind of special fare shirt on. But you don't know? I really don't, unfortunately. I'm sorry. So the question is, the insurance is a participant coverage? Yes. Okay, now, were there any parallel cases with push trucks and sprint cars or midgets? Because I think there have been some cases on that in other states. I'm not sure. I don't believe I found any, Your Honor. So, I mean, you couldn't have the event without it. Right. I did not find any parallel cases, Your Honor, as far as Illinois is concerned. If I missed them, I apologize. I think it was Missouri. Well, I missed federal, too. I did not find any, unfortunately. So I do apologize for that. But the question is, what is a participant? What is a participant, and is the contract that's limiting the coverage to participants, is that ambiguity? Is that clause ambiguous? We believe it is, and it should be construed strictly against the insurance company. The insurance company's argument is, well, clearly he's a participant. Clearly he's a participant. Well, why? Why is it so clear that he's a participant? Why do you say why not? He's not identified. He's in the pit where everybody else is. Why is he not a participant in the event? When I, when we think of participant, Your Honor, what we think is the people actually driving the vehicles. That is it. Okay, but tell us, other than just what you think, what makes this ambiguous? Because he What is there about it? He is not someone who is competing in the event. He is not someone who has signed up to Well, he's a competitor maybe versus a participant. What's that? If he's competing, he's a competitor. Correct. But I think the insurance has already said that for sure the people driving are participants. So they're not defining the difference between that. His, if Mr. Hubert wasn't there, the event could likely, someone could replace him or it could still likely go on. He's not someone who's winning money. He's not someone who's signing up to compete against other drivers in this event. He's not someone who even necessarily is germane to this event. He is serving a purpose. But we equate, I equate him more to, if you think of a baseball game or a basketball game, a ball boy or someone who's sitting on the sidelines, maybe a paramedic on the sidelines of an NFL game. They're not playing the actual game. They're serving a purpose, but it can go on without them. They are not participating in the success or the action of that event. That is where we think the difference is. And the most important thing we believe is that one thing that makes this term ambiguous and indefinite is no one can really say who is or who is not a participant. It would have been very easy to define when we say participant in a sporting event, this is exactly what we mean, X, Y, and Z. The way this contract is written, a guy selling tickets 100 yards away from this could technically be a participant because he's taking part in this event. That's the plaintiff's argument in this. They're going by the dictionary term to take part in. It could literally be anyone. It could be a spectator. Technically, the spectator's taking part in an event. They paid money. They have a ticket. They're watching. Without spectators, there is no event. Yeah, but it's all, the person, everything's paid probably from the interview. Correct. But what I submit to you is if you cannot define what participant actually entails, if it can literally encapsulate anyone who is on the fairgrounds at the time this event is going on, that is ambiguous. That is indefinite. Well, there's limiting language in this clause. So your popcorn vendor or your ticket salesperson argument, if you look at the limiting language which says participating in any sports or athletic contest, so you at least have to be involved in the sport, it seems to me, or the athletic contest. So is your argument that because you're selling popcorn that you're somehow involved in the sporting or athletic contest? I think if you're going to take the word as the plaintiff is using it, to take part in, I think it makes it that broad then that it could encapsulate a vendor who's strictly working because of that event that day. I think they are taking part in it, and I think they are involved in a way in the event. And this particular policy, what kind of policy was it? It's a commercial general liability policy, and this is the part that limits the coverage is actually an endorsement part of the contract. So it is a general liability policy? Yes. And then that brings me to my next part. Also, this goes to a type of, in our minds, kind of a public policy type of argument as well. The discovery and the depositions and the fair believe that they, Mr. Hubert and their volunteers, would be covered under such an event. The courts have to look at what were the parties thinking when they met this agreement? What did they bargain for? What was the testimony in that regard? Some of the fair board testified that they believed they had coverage for their volunteers, and I think that was only in the liability portion. So if we can't discuss that because that's not part of the MR record, I can strike that. But what did the parties bargain for? If the fair only does these types of events, hosts these types of things, they don't pay their volunteers that help. Do they think that they are now going to be on the hook? If an accident happens and they get hurt, I don't believe so. And really, once again, if we go back to how broad is this dictionary term of ambiguous, to take part in, the way we see it in the court, obviously the trial court respectfully disagreed. The way we see it is that might mean zero people could be covered if an accident happened. A spectator, as I've said, is taking part in the sporting event. They're there watching this event. So what if this cable breaks and a piece flies up and hits a spectator in the face? Now, are they a participant? Now the fair has no coverage for them. It doesn't define that. It doesn't tell us what a participant is. Nobody knows where this begins or ends. No one can say what a participant is. We certainly can say our guy is not. They can certainly say he is. But no one for sure can say where this begins and ends. It's literally an indefinite exclusion, and that's why we believe it's ambiguous. Further, as I've stated, I believe that it left the Randolph County Fair Board potentially no coverage for liability for any of the events that they have. So to me that's almost an illusory type of clause or endorsement in the contract, which should also be held strictly against the insurer who has drafted the contract. Does the – I didn't see in the briefs any argument about what the general intent of the policy is or what. Well, Your Honors, I don't – So when you look at the policy itself, what was the language of the policy? Well, I think the – if you look at the policy, you would see the general intent of the policy was to provide some type of coverage for this entity when it has these things. Obviously, these endorsements got put down to limit then what they were going to cover. But the general intent – we believe the general intent was for the Fair Board to believe they could have these events and people would be protected under it. We believe the insurer really didn't cover much of anything. I guess the only thing that would be covered under this policy is if there was no event going on and somebody tripped over a defect or something. That's really the only thing I could think that would be covered at this point. Is the policy attached to the appendix? It should be, Your Honor. It should be attached to the plaintiff's motion. Before the judgment? Yes. And I don't recall offhand what exhibit that would be, but I do believe we did attach that – they did attach that. It is – it is exhibit number one with respect to their motion, Your Honor. Yes. But in conclusion, aside from rebuttal, Your Honors, we believe that this is clearly an ambiguous term. It doesn't – nobody knows where it begins or ends with respect to whether a participant is or isn't. We believe that since it's ambiguous, it should be construed against the insured – the insurer, I'm sorry. And it should not be a question of law. It should go back to the trial court. The trier of fact or the judge should have to decide after a full hearing is put on. This is not something that's right for summary judgment. We do not believe. And aside from the fact that we believe this term is ambiguous and it should be construed, simple public policy and fairness demand that this make it further than summary judgment. The Randolph County Fair Board, the only thing they do is host these types of events. So if they literally have been paying premiums for a coverage that doesn't exist, we believe that's against public policy as well, Your Honors. Unless there's any questions, I'll step down. Thank you. Mr. Tritanko, good morning. Good morning. May it please the Court. I don't see the policy attached to your motion. Is it in the appendix? Do you know? Yes, and it was one of the first exhibits submitted at trial. And so it's on the record. I don't have the record, but I just have the briefs. Is it in the briefs? Do you know? The language is quoted as an entirety, but not the- The policy, the full policy. No. I'm looking for the full policy. That's in the record. Thank you. And I hate to bother you, but so this was a general liability policy. What was the intent of the policy? Oh, to provide coverage for the entire fair. Which included personal injury. Pardon? Which included personal injuries to certain people at the fair? Sure, because it was not excluded. Okay, so there was some language about providing coverage in the event of a personal injury, and then there was some definition of that. But then this was an exclusion. Correct. That's what we're talking about. This, I believe, was the first endorsement of the policy. Okay. And maybe we should address this in reverse order. This is a very simple issue. First of all, it wasn't raised at trial. What wasn't? This issue that somehow this is an illusory contract. That the, you know, when you purchase insurance from an insurance broker, as was the case here, because West Bend doesn't have its own agency, it's too small. Well, he actually brokers the insurance for the insurance company. You don't purchase anything from a broker, do you? Yeah, well. Oh, you don't contract with him, you contract with the company. Oh, yes, of course. That's what I meant. Or just through a broker. Right, through a broker. But what the, when you go to buy insurance, what kind of insurance you want to buy, what levels of each part of insurance, and you select which types of insurance you want. The policy, I mean, it's not like this was hidden. This is the first endorsement of the policy. It's not illusory because there's exclusion and all the other personal injuries are covered. It's only the ones involving sporting events. As you can imagine, that's a much different risk than the general liability that's assumed at a county fair. You know, someone tripping over an electrical wire going underneath, you know, between two booths. You see that all the time in every fair I've been at. There's any number of things that could cause injury. But an athletic, especially a vehicle racing event, presents a whole different level of risk. There aren't policies for that. They just didn't buy it. That doesn't make this agreement illusory. It means it's the wrong insurance. That's an issue between their insurance agent or broker, and it has to be a broker. I know that's gotten some treatment in the appellate courts lately. But you can either have a captive agent, which would be our agent for purposes of vicarious liability, or a broker, which is somebody who handles a number of insurance companies, which would be the insurance agent. That's not an issue in this case. The second thing is this was not decided in a motion for summary judgment. I don't know why I keep saying this. If you look at the court's ordinance, which is in their appendix, it says this case came on for trial. The court denied the cross-motion for summary judgment. The parties, and if you look at the very start of the record, I indicated that, Your Honor, we're presenting this as a bench trial because we don't expect the witnesses are going to testify any differently. I think we just submitted the depositions taken in the case to the court and argued the case because all the evidence was there. The court needed to make a factual determination, or at least so it thought, and it made a factual determination, and it specifically says in its order what the court determined. Oh, maybe I'm reading this wrong, but it says this call is coming on hearing on the motions of defendant for summary judgment. So if you look at the appendix. Are we talking about the March 12th, March 10th order? No, I'm talking about the September 23rd, 2014 order. It's found in the appendix of the appellant's brief, A58. This clause came on for trial on the 19th day of September 2014. Okay. So what you're saying is that, are you saying that the summary judgment had been previously denied? Yes. And there's an order in there denying the summary judgment, so the September 23rd order is an order on trial. Yes. But it's a stipulated bench trial, basically. Yes, for efficiency purposes. So there was no live evidence submitted on paper after everyone's summary judgments were denied? Yes. Okay. Yes, that's right. So, I'm sorry to keep interrupting, but so Mr. Ebert, did he wear anything that would have identified him as a fair volunteer? Or is the argument by him just that I was there, I was a volunteer, and I pulled people out? There is no evidence in the record one way or the other as to what he was wearing that I recall. Okay. And is there any evidence in the record, and I don't have that record, but is there any evidence in the record that you had to make an application to get into this? I would think that you apply with a piece of paper, you pay your fee to get into this sporting event, and then based on approval of your vehicle, you're allowed to participate. Is that how it ran? That's correct. Okay. There is a board, of which, by the way, Raymond Hubert was a member. They give the group of people who, quote, take part in it. That's his testimony. They ask an open-ended question, who takes part in this event? And he said he read a lot of the positions, including the cable person, which obviously is a quote, after reading the testimony, is essential to the event, which is what really distinguishes this from any other situation. Without this person's position, the event simply cannot take place. So he's, in the court, made an interesting point. He said this guy is not only taking part in it, he's not only a participant, he's an essential participant to this event, because without him it doesn't go forward. I didn't answer your question, though. The answer to the question is the contestants have to fill out a form. You mean the participants? Who fills them out, a contestant or a participant? The contestant, the people driving the trucks. They fill out a form, a waiver, probably, of liability. There's a waiver in there. There's also a fee involved. These are categorized by horsepower and other considerations. And you have to indicate what kind of vehicle you have, so they classify you and which event you're going to be running, because you wouldn't want to run a NASCAR against it. Mini Cooper. Yeah, or a stock car. So, but those are filled out by the competitors, which, by the way, a competitor would also be a participant. It's a narrower category, but they certainly take part in it. I'm sure that they do. Is there a case law in Illinois on what is a participant and what is not? At least I don't know. And we did every conceivable, what they call Boolean searches, and also went through all the digest. This is odd. It strikes me as odd that Illinois hasn't addressed this, but it hasn't. I mean it. But how is anyone to know, under this exclusion, how far it extends? Because you say that he was essential, which is an important term. He was essential to the event. But what about their argument that a vendor, for example, a ticket salesman or a popcorn vendor could be a participant? What about that? Well, of course, there's got to be a record, some factual, as to what the person's activities are. But take part in would indicate that you have to have some type of active role in the event itself. For example, the idea that, well, if you were, even though he defines a spectator as a participant, I don't think, because as you say, the policy actually has to qualify in language. You'd have to read the whole phrase together. But it would have to be someone who's actually doing something to put on the event. So, I agree with you. I think this has to be read completely. It says, because it includes practice. Yes. So, practicing for or participating in any sports or athletic contest or exhibition. So, there's clearly limiting language. But would you agree that because of the dynamic going on here that this is an ambiguous term? No, not at all. No. It's not ambiguous because it's broad. And there's no case that says because it's broad, it's ambiguous. And if you think about it. And that's important. You believe there's no ambiguity. No, there's no ambiguity. By the way, the mere fact that there's an ambiguity in the policy, the idea that if it's ambiguous, the insurance company automatically loses. Any ambiguity has to be ruled against the insurer as the director of the policy. The case law is quite clear. Everyone cited it. But you have to find an ambiguity in which under one commonly accepted, in this case, dictionary term, it would be covered and then another would not. There's two meanings to the word, one of which would be covered, or one of which would fit into the plaintiff or to the person involved, and one which would not. If you can invent some type of, or as the courts say, torture some ambiguity into it, the mere fact that there might be, for example, well, it might be ambiguous as to a spectator. It's not ambiguous with regard to this participant for this reason. In the record, the only testimony that's concerning what the common understanding of the plaintiff, the underlying personal injury plaintiff, which is Raymond Hubert, was when he was asked, well, who took part in this event? He identified the people, including himself. Even he understood, under the applicable definition, take part in it, that he was one of the people taking part in the event. The court had a trial. The court made a factual finding that, yeah, I agree with his view. He was taking part in the event. So the court found he was a participant. It did. Okay, now, I hate to keep going back to push trucks because I think that's the only Illinois or some case law, but at one time a push truck operator was not a participant. It had its change, or they added it in the contract. I don't know. I'm sorry, what? A push truck, you know, on these sprint cars, race cars, things, the push truck. Now, he's essential because if the cars don't start, they can't have a race, right? So back, I don't know what day they changed, but the push truck operator was not a participant back in Illinois at some time. And later, I don't know if they became or they changed the policy. Do you know that? I have no idea. Because there are some cases on that. So it's hard to determine, but if you don't have the case, I can't tell you. Because I don't know the date of the change, if there was a change, or if the policy was changed. And it certainly would have been easy to make the policy clear that a participant is someone who is essential to the operation of the event. I mean, that's what you're talking about is somebody who is actually essential to making sure the event can go on. Actually, the court, I think, added something that's not actually in the language. It doesn't say essential participant. So the word participant would be broader than what the court actually required it to be. You think it's even broader than what the court said? Right. Yes. Doesn't that make it ambiguous then, Mr. DeFranco? No, because there's not a separate meaning which would encompass what the plant was doing, or what Mr. Hubert was doing at the time, under which he would not be considered a participant. Well, I'm sorry. Well, you can, as the courts have indicated, you can torture a word long enough to make it admit to a, quote, ambiguity. But, in fact, you've raised an issue. In ambiguity, according to the American standard cases, is a term that is reasonably susceptible to greater than one meaning. So the first question is, is it reasonably susceptible? If you go to the dictionary, in fact, we gave the trial court numerous dictionary definitions, everything from Wikipedia to the online dictionary. Merriam-Webster's, which is the one I keep in my office, which is like 40 years old, they all say to take part in. And the court ruled he took part in. So I would argue that, no, it's not ambiguous. And to take part is an action verb. So you have to do something active. If you have to find, take part in. But it's take part in any sports or athletic contest. Yes. So it seems that there could be an ordinary interpretation that you have to be like the driver of this truck in the mud. But you're changing the actual term from participant to competitor. But there's limiting language after the word participant. In fact, there's preliminary language that includes the practicing. So is he a practicing? I'll give you an example. Say they go out there the day before the race and they say, I'm sure this cable's long enough. We're strong. So they test it. That would be practicing for the event. And that would be excluded under the policy. There's no, it was stipulated at the beginning of the trial that this was a sporting or athletic event. So the only issue is whether he was practicing for it. Well, he wasn't practicing for it because this was during the event itself. But had they done it the day before and were trying to make sure that everything worked properly, then it would be excluded too because they're practicing for the event. They wanted to make sure that while everyone's exposed, because it's the same risk. Well, basically no one's covered under the policy is what you're saying. No one who takes part in. It is participating. No matter how. No matter how. Correct. If he gets a paper cut when he signs the waiver, he's out. Yes, I believe that would be correct. That's right. Yes, of course. Let me ask you this since you raised it, a really important point. So the relief that you're asking for in this case is to affirm the bench trial judgment, the judgment of the court after a trial. And then Mr. Hubert would actually be asking for us to vacate the finding of the court, the judgment of the court. Well, and that's why I'm so emphatic this was not cross motions for summary judgment. That's why I want to make sure we understand. The only relief that we're asking for is that this appellate court respects the factual determination that was made on a specific set of evidence that was submitted to the court. And in which the case law says you have to give due deference to unless you think there's nothing to support it or it's an abuse of discretion. And that's all we're asking for is to affirm the factual findings of the trial court based on the trial court's determination. One of the important things I think about appeals is that you have a record, that you have a specific situation to find. Anyone can dream up situations. Again, the appellate court language, torture a word until it admits to an ambiguity. But in this case, the definition given by Mr. Hubert in his deposition included him. They said I was one of the ones who took part in it. The court pointed out that it was essential, which I think makes its decision harder to get around. But the language doesn't say essential participant. It just says the person who participates in. And certainly he would be one. And that was the court's factual finding. Which is all we're asking you to do is abide by the trial court's determination of fact after a bench trial. So Mr. Grimmel's request that we reverse and remand for further hearing. That makes no sense. It would make sense if there was a bench trial motion for some of the judges. Let me finish. But we've already had the trial. Right. You get one shot. Unless there's evidentiary error or some other error. Instructional error. Of course, it can't be here. Or at least discretion. Yes.  Great. Thank you. Thank you so much. Mr. Grimmel, what do you have to say about the relief that's to be afforded here? Your Honors, first I want to apologize. I didn't want to mislead the court. I believe in my recitation of the history of the L case versus this case, the L case was up here on summary judgment. I believe, honestly, I just got them confused. This was a bench trial. And I do apologize for saying it was cross motions for summary judgment. That was had earlier in this case. It was the L case that got decided by summary judgment. We came here on that. That got changed. That's what was happening in the L case. So I do apologize for misconstruing that. I did not want to think I was misleading your Honors. What we would be asking is that the judge did, in fact, use his discretion and that this do go back down. I don't have much more to say on the issue except for the fact what your Honors brought up and what I've said in my main opening was that this, to me, is clearly ambiguous. As your Honors said, literally someone getting a paper cut signing something for this could technically be a participant. This covered nobody in this event. The whole purpose of buying insurance is to have coverage for these types of things if they occur. What is the point of having the insurance if nobody is effectively covered? Now, I know insurance companies can limit their coverage. That's fine. But they could have defined, well, this is what a participant is going to be. It's going to be the driver. It's going to be anyone who's volunteering. It's going to be anyone who crosses the fence, anyone who's selling tickets. It would have been very easy to define what a participant is, but they did not. So what we're left with is looking at the dictionary definition, to take part in. Now, when you read it with, as the contract says, a participant in a sporting or athletic event. So looking at the dictionary definition of participant, someone who takes part in a sporting or athletic event. What is to take part in that event, though? I submit to you it could have been anyone. Spectators, vendors, the board planning the event, just literally anyone that's involved. A high school kid that got paid $5 to hang up signs around town to get spectators to that event is taking part in that event. He's attracting a crowd to the event. He or she is. So I submit to you this is clearly ambiguous. It's an indefinite term. It provides no coverage. It could have been defined. We would ask that the trial court be reversed. Your honors. If there's no questions, I will sit down. No questions. Thank you, your honors. Thank you very much. This matter will be taken under advisement, and a disposition will be issued in due course.